Motion to Dismiss.
The opinion of the Court was delivered by
PocuÉ, J.
Opponents and appellees have moved for the dismissal of this appeal, on the ground that the amount in dispute does not exceed one thousand dollars, exclusive of interests.
The contest arose over a tableau of classification of debts presented by the administrator, and which was opposed by appellees, who. complained that, as judgment creditors of the deceased for $786.66, they had been omitted from said tableau, and in which opposition they sought to he paid hy preference over other creditors recognized on the account, and whose claims aggregated the sum of $591.59.
, The amount of funds in the hands of the administrator is $2,270, and the judgment appealed from sustained the opposition pf appellees,. *1064 ordered, the payment of their claim by preference out of the proceeds of the sale of the immovable jiroperty, and homologated the tableau as thus amended.
From this statement it appears that the amount of the fund to be distributed, even after satisfaction of opponents’ claim, would yet be $1,483.34, and that, therefore, the fund to be distributed exceeds one thousand dollars ; which is, in such cases, the test of the jurisdiction of the appellate court, under the provisions of Article 81 of the Constitution.
The unappealed portion of the judgment orders the payment of $591.59, after the deduction of which from the total amount of assets, the administrator would have in his hands, subject to the control and order of the Court, the sum of $1,678.41.
It is thus manifest, that in either hypothesis, the controversy pre? Sents an issue turning upon a fund to be distributed in an amount sufficient to give jurisdiction to this Court.
The motion to dismiss is, therefore, denied.
On tiie Merits.
The controversy arises from the following facts :
In July, 1872, the deceased, authorized by her husband, purchased from opponents a certain tract of land situated in this parish, for three thousand dollars, for the purchase price of which she executed her six promissory notes of $500 each, two of which were made payable in each of the years 1874, 1875 and 1876.
In 1875, opponents took judgment against her on four of the notes, then matured, and issued execution thereon", under which the property was sold, and did not realize enough to satisfy the mortgage debt; and in 1877, the same parties obtained a personal judgment against the deceased, for the unpaid balance of their claim, which amounted to $786.66, and it is for that" amount that they seek to be recognized as judicial mortgage creditors of the succession.
Among other grounds of resistance, the administrator urges the absolute nullity of this judgment, on the ground that the notes'on-which it rests, represented a debt of the husband or of the community,’ and not of the wife, and that the latter was prohibited bjr law from binding herself or her property for the payment of the debts of her husband or of the community.
This defense suggests an inquiry into the nature of the purchase fuade-by the deceased in 1872.
This inquiry is resisted by opponents, who contend that the nullity of the judgment could be demanded only in a direct action of nullity, or by appeal. *1065 •It is now well settled, that the nullity of a judgment predicated upon a contract of a married woman, without personal service, by default, and without service of the judgment on the defendant, can be urged by her whenever an execution is taken against her. Baines vs. Burbridge, 15 An. 628; Medort vs. Famach, 15 An. 651; Bowman vs. Kaufman, 30 An. 1021. Such is the condition of this case.
This opposition is virtually an execution of opponents’ judgment, and it was competent for the administrator, in resisting its payment, to urge the nullity of the obligation on which it is predicated-.
Opponents further contend that the deceased, having suffered the execution of the judgment against her property without opposing the same, could not, if living, and her legal representatives cannot now be allowed, under the provisions of Art. 612 of the Code of Practice, to urge the nullity of said judgment. Two answers are suggested at once to this argument.
The property seized was that covered by the vendor’s privilege, and whether the property was the community’s or the wife’s, the latter could not oppose the execution of the judgment recognizing and enforcing the vendor’s privilege, as a proceeding “ in rem,'1 and not as a personal obligation of the wife.
And in the second place, the record shows that at the time of said execution, the deceased was yet under marital influence, and hence, the provisions of Art. 612 could not apply to her. 23 An. 313, Darcy vs. Martin, Cobb & Co.; 28 An. 758, Bienvenu vs. Prieur.
It is now well settled that the wife cannot be estopped by any act of recognition or ratification of her contracts, during coverture, or even by a confession of judgment, from subsequently urging the nullity of such contracts. 14 An. 165; 16 An. 11; 29 An. 600, Edwards vs. Edwards, and authorities therein cited.
We now reach the consideration of the question of the nature of the purchase from which flows the obligation now sought to be enforced against the purchasing married woman.
Under the textual provisions of our Code, all purchases made during the marriage, even when made only in the name of one of the two, and not of both spouses, are for the benefit of the community; and jurisprudence has settled, beyond the domain of discussion, that the wife, purchasing in her name, in order to avoid the operation of that rule, must show that she was either separate in property, or that the purchase was made with her own paraphernal funds, which she administers without the assistance of her husband, or in case of a purchase on credit, that she has revenues derived from her paraphernal property sufficient to pay the credit portions of the purchase Avlien they become due. C. C. 2402; 33 An. 160, Miller vs. Handy.
*1066 Now, in this case, the act of sale, and all the other evidence in the record, fails to show that the deceased was separate in property from her husband, or that she had any paraphernal funds, or separate property yielding revenues; it is not even alleged or pretended by the opponents that she was placed in any of the conditions which are requisite in law to give to her purchase the character of a transaction for her separate account or benefit.
On the contrary, the record shows that the purchase was made exclusively on credit, and that no part of the purchase price was ever paid or satisfied, otherwise than under execution, and forces the conclusion that the property thus purchased fell into the community, and that the purchase price was a community debt, for which the wife could not bind herself. It follows, therefore, that she cannot he held personally liable for the notes which she executed under those circumstances, and that the judgment rendered against her, having-the practical effect of enforcing- a contract entered into in violation of a prohibitory law, is a nullity.
In the case of Forbes vs. Layton, recently decided at Monroe, we had occasion to review our jurisprudence ou this question, and we reaffirmed this well established doctrine governing- purchases made by married women under similar circumstances.
These views of the present controversy preclude the necessity of an expression of opinion on other questions raised and discussed by counsel on both sides.
It is, therefore, ordered, that the judgment appealed from be amended, in so far as it recognizes opponents’ claim, which is rejected, and whose opposition is dismissed; and that, as thus amended, said judgment he affirmed; costs of appeal, and of the opposition below, to be paid by opponents.